FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2013 JUN 13 A 10: ⁖

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

DINO TOLAND,

    Plaintiff,

v.

STANLEY WILLIAMS; WAYNE
JOHNSON; and ERIC SMOKES,

    Defendants.

CIVIL ACTION NO.: CV613-010

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Dino Toland ("Plaintiff"), an inmate currently incarcerated at Hancock State Prison in Sparta, Georgia, filed an action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement and alleging infringement of the free exercise of religion while he was housed at Smith State Prison in Glennville, Georgia. Defendants Stanley Williams, Wayne Johnson, and Eric Smokes filed a Motion to Dismiss. By Order dated May 1, 2013, the undersigned directed Plaintiff to file any desired response to this Motion, and Plaintiff failed to do so. For the reasons which follow, Defendants' Motion should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff contends that, while incarcerated at Smith State Prison in Glennville, Georgia, Defendants failed to take reasonable steps to "abate the issues related to receiving nutritionally balanced meals, ventilation, sanitation, mice [,] and insect infestation." (Doc. No. 1, p. 4). Plaintiff alleges that he filed a formal grievance related

AO 72A
(Rev. 8/82)

to these issues, it was ignored, and conditions remained unchanged. Plaintiff argues that the conditions amount to a harsher sentence than was imposed upon him in violation of the Eighth and Fourteenth Amendments. In a letter attached to his Complaint, Plaintiff further contends that Defendants have deprived him of a "restricted vegan food diet plan" free from "animal produced products" as is required by his religion. Plaintiff alleges this failure amounts to a violation of his free exercise rights as guaranteed by the First Amendment.

Defendants counter that Plaintiff failed to fully exhaust his available administrative remedies on his Eighth Amendment claim before filing this cause of action. Defendants assert that Plaintiff's Fourteenth Amendment claim is premised upon the same facts as his Eighth Amendment claim; therefore, it is more properly subsumed by that claim. Defendants also contend that Plaintiff's First Amendment claim is based upon vicarious liability, fails to state a claim, and contend that they are entitled to qualified immunity.

## STANDARD OF REVIEW

Under a Rule 12(b)(6) motion to dismiss, a court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). "A complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Ashcroft, 556 U.S. at 678.

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

## DISCUSSION AND CITATION TO AUTHORITY

### I.   Exhaustion of Available Administrative Remedies[1]

Defendants assert that Plaintiff failed to exhaust all administrative remedies available to him prior to filing his Complaint contesting the conditions of his confinement. The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal

---

[1] Plaintiff's Fourteenth Amendment claim is based upon the same facts as his Eighth Amendment claim. Because he is a convicted prisoner, Plaintiff's claims contesting the conditions of his confinement are properly analyzed under the Eighth Amendment and are accordingly addressed herein. "Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996) (internal citations omitted). Defendants' Motion as to Plaintiff's Fourteenth Amendment claims should therefore be **granted**.

3

with the merits" of a particular cause of action. Id. (internal punctuation and citation omitted). A judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id.

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). 42 U.S.C. § 1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007).

In Turner v. Burnside, 541 F.3d 1097 (11th Cir. 2008), the Eleventh Circuit clarified how the lower courts are to examine the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to

4

make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376-77.

Standard Operating Procedure ("SOP") IIB05-0001 sets forth the steps an inmate must complete under the Georgia Department of Corrections' grievance procedure. Prior to December 10, 2012, an inmate was required to file an informal grievance "no later than 10 calendar days from the date" the inmate was aware "of the facts giving rise to the grievance." (Doc. No.13-3, p. 6). An inmate was to be given a written response to his informal grievance within ten (10) calendar days of the counselor's receipt of the inmate's informal grievance. (Id. at p. 7). If the inmate was dissatisfied with the resolution of his informal grievance, he was to file a formal grievance within five (5) days of his receipt of the written resolution of his informal grievance; the inmate was required to complete the informal grievance procedure before being issued a formal grievance by his counselor. (Id. at pp. 7-8). Since December 12, 2012, these informal attempts at resolution are encouraged, but are not required to begin the formal grievance process. (Doc. No. 13-4, p. 5). Under either procedure, inmates must initiate a formal or original grievance. In addition, an inmate may only set forth one issue per formal grievance – a grievance which sets forth more than one issue will be rejected. (Doc. No. 13-3, p. 8; Doc. No. 13-4, p. 8). Formal or

original grievances are then investigated and responded to within 30 or 40 calendar days (depending on which procedure is applicable) by the Warden of the institution. (Doc. No. 15-1, p. 5). Once an inmate receives the Warden's response to his formal grievance and is dissatisfied with that response, the inmate is advised of the appeals procedure and given a grievance appeal to file with the Central/Commissioner's office. (Id.). If the Warden does not respond within the timeframe proscribed, then the inmate may file an appeal without having received a response. (Id.). The formal grievance process is not complete until a response is rendered by the Central/Commissioner's Office. (Doc. No. 13-3, pp. 9-10; Doc. No. 13-4, pp. 11-13).

Defendants contend that Plaintiff filed "numerous" grievances while housed at Smith State Prison regarding a variety of issues. (Doc. No. 13-1, p. 8). Defendants aver that only one grievance filed on January 11, 2013, encompasses the allegations contained in Plaintiff's Complaint. (Id.). Defendants allege that Plaintiff failed to exhaust his available administrative remedies as to that single grievance. (Id. at pp. 8-9). Plaintiff asserts in his Complaint that Defendants "failed to respond" to his grievance. (Doc. No. 1, p. 3).

Plaintiff attached two informal grievances as exhibits to his Complaint. (Doc. No. 1, pp. 9-10). It does not appear that either of these informal grievances is applicable to Plaintiff's allegations regarding the conditions of his confinement.[2] In Informal Grievance #133090, filed September 23, 2012, Plaintiff alleges Defendant Williams and "food stewards" are "in violation of their ministerial duty" for their failure to prepare food

---

[2] In fact, the grievance Plaintiff refers to within the Complaint is most certainly Grievance 141408, discussed below. Compare Doc. No. 1, p. 3 and Doc. No. 13-5, p. 2. Because Grievance 141408 states allegations nearly identical to those contained in Plaintiff's Complaint, the Court believes this grievance to be the one Plaintiff contends Defendants failed to respond to.

6

in accordance with the law. (Doc. No. 1, p. 10). This grievance was denied as untimely and it appears no appeal was taken. (Id.). Plaintiff filed Informal Grievance #139283 on December 2, 2012, asserting a violation of his First Amendment rights based on Smith State Prison's failure to provide him with vegan meals as required by his religion. (Doc. No. 1, p. 9).[3] Plaintiff's second grievance was also rejected as untimely filed. (Id.). There is no indication that Plaintiff appealed this grievance. (Id.).

Plaintiff gave Grievance Number 141408 to the Counselor on January 14, 2013, alleging "violation of the 8th and 14th Amendments of the conditions of the confinement, by failing to provide nutritionally balanced full meals, sanitation, refusing to give cleaning supplies, and ventilation in cells. Prison officials failed to take reasonable measures to abate the issues, which created a liberty interest." (Doc. No. 13-5, p.1). Under the current grievance procedure, the Warden then had forty calendar days, or until February 23, 2013, to provide Plaintiff with a response or request an extension of time to respond. (Doc. No. 15-1, p. 5; Doc. No. 13-4, p.10). Defendant Williams responded to Plaintiff's grievance on February 4, 2013. (Doc. No. 13-5, p. 3). Plaintiff's grievance was rejected for failure to adhere to the requirement that only one issue may be addressed in a single grievance. (Id.). However, instead of waiting for the Warden to respond to his grievance or for the forty day response window to lapse, Plaintiff filed the instant suit on February 1, 2013, asserting nearly identical grounds as those contained in the grievance. (Doc. No. 1).

Plaintiff did not exhaust his available administrative remedies challenging the conditions of his confinement prior to filing his Complaint. According to the current

---

[3] While it appears that Plaintiff also failed to exhaust his administrative remedies as to this claim, Defendants did not move for dismissal on this ground. Thus, the Court addresses Plaintiff's First Amendment claim below.

7

grievance procedure, the Warden was permitted forty calendar days to respond to Plaintiff's grievance. Instead of waiting for the Warden to respond or to allow for the procedurally prescribed time for the Warden's response to elapse, Plaintiff completed his Complaint on January 24, 2013, and it was filed in this Court February 1, 2013. (Doc. No. 1). Even taking Plaintiff's version of the facts as true, which this Court must do, Plaintiff did not exhaust his available administrative remedies before he filed this cause of action.[4] Plaintiff was apparently well aware of the grievance procedure, as he filed numerous grievances while housed at Smith State Prison. See Doc. No. 1, pp. 9-10; Doc. No. 13-1, p. 8. Simply put, Plaintiff did not exhaust his available administrate remedies prior to filing this cause of action. This portion of Defendants' Motion should be **granted**, and Plaintiff's Eighth Amendment claims contesting the conditions of his confinement should be **dismissed**.

## II. First Amendment Claim

Defendants contend that Plaintiff names them as defendants because Plaintiff apparently bases their liability on Defendants "failure" to respond to his complaints and informal grievances in their supervisory capacities.

Ordinarily, supervisors are not liable for the alleged unconstitutional acts of their subordinates in a § 1983 action. See Young v. Nichols, 398 F. App'x 511, 515 (11th Cir. 2010) (citing Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010)). However, "supervisory liability is appropriate under § 1983 either when the supervisor personally participates in the alleged constitutional violation or when there is a causal

---

[4] Assuming - despite no indication it was the case - Plaintiff believed the former grievance procedure was still effective, Plaintiff still did not comply with procedure. Under the procedure in effect prior to December 10, 2012, the Warden would have been afforded thirty calendar days to respond to a formal grievance. (Doc. No. 15-1, p. 5). This procedural window would have lapsed on February 14, 2013.

connection between actions of the supervising official and the alleged constitutional violation." Id. (internal quotation marks and citations omitted). "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, No. 11-10104, 2011 WL 3585815, at *8 (11th Cir. Aug. 16, 2011). A "causal connection" may be established when the supervisor is well aware of a "history of widespread abuse" and fails to correct the alleged violations. Bryant, 575 F.3d at 1299. Constitutional "deprivations that constitute widespread abuse sufficient to notify the supervis[or] must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." Id. at 1299-1300.

Plaintiff makes no allegations that any Defendants were personally involved in depriving him of his religiously-mandated vegan meals. The letter setting forth Plaintiff's First Amendment claim is addressed "To Whom it may concern" and does not refer to any of the Defendants by name or position. (Doc. No. 1, p. 11). Plaintiff's Informal Grievance 139283 is addressed to Defendant Johnson, but it was evaluated by a Counselor. (Id. at p. 9). Plaintiff has not demonstrated that any of the Defendants were even aware of his request to receive vegan meals in accordance with his religion. Plaintiff fails to set forth any direct involvement or direct link between the Defendants and any alleged constitutional deprivation. It is apparent that Plaintiff attempts to hold

9

Defendants liable based solely on their supervisory positions, which Plaintiff cannot do in section 1983 litigation. This portion of Defendants' Motion should be **granted**.

It is unnecessary to address Defendants' remaining contentions regarding dismissal and their alleged entitlement to qualified immunity.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion to Dismiss be **GRANTED**. It is also my **RECOMMENDATION** that Plaintiff's claims against Defendants be **DISMISSED**.

**SO REPORTED** and **RECOMMENDED**, this 13th day of June, 2013.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)